534 So.2d 1151 (1988)
Cary Michael LAMBRIX, Appellant,
v.
STATE of Florida, Appellee.
No. 73348.
Supreme Court of Florida.
November 30, 1988.
*1152 Larry Helm Spalding, Capital Collateral Representative and Billy H. Nolas, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Cary Michael Lambrix, a state prisoner under a sentence and warrant of death, appeals from the trial court's denial of his motion for postconviction relief and seeks a stay of execution. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Lambrix was indicted for and convicted of the 1983 double murder of two dinner guests. His conviction and sentence of death were affirmed by this Court in Lambrix v. State, 494 So.2d 1143 (Fla. 1986). Our opinion gave the following summary of the facts surrounding the killings:
On the evening of February 5, 1983, Lambrix and Frances Smith, his roommate, went to a tavern where they met Clarence Moore, a/k/a Lawrence Lamberson, and Aleisha Bryant. Late that evening, they all ventured to Lambrix' trailer to eat spaghetti. Shortly after their arrival, Lambrix and Moore went outside. Lambrix returned about twenty minutes later and requested Bryant to go outside with him. About forty-five minutes later Lambrix returned alone. Smith testified that Lambrix was carrying a tire tool and had blood on his person and clothing. Lambrix told Smith that he killed both Bryant and Moore. He mentioned that he choked and stomped on Bryant and hit Moore over the head. Smith and Lambrix proceeded to eat spaghetti, wash up and bury the two bodies behind the trailer. After burying the bodies, Lambrix and Smith went back to the trailer to wash up. They then took Moore's Cadillac and disposed of the tire tool and Lambrix' bloody shirt in a nearby stream.
Id. at 1145. We later denied a habeas corpus petition alleging ineffective assistance of appellate counsel. Lambrix v. Dugger, 529 So.2d 1110 (Fla. 1988).
Following the issuance of the death warrant, Lambrix filed a motion for postconviction relief in the trial court. The court denied the motion without holding an evidentiary hearing, and Lambrix took this appeal. In order to have time to properly address the appeal, we stayed until noon of December 2, 1988, the execution originally scheduled for November 30, 1988.
Lambrix's motion asserted a number of claims. However, his appeal addresses only two issues, both of which are related to his consumption of alcohol.
*1153 The record of the trial contained the following testimony as to Lambrix's alcohol consumption and its effects:
1. Frances Smith, the state's primary witness, testified that Lambrix had been drinking beer and mixed drinks in a bar where they made the acquaintance of the two victims; that of the four persons, only Clarence Moore appeared to be intoxicated; that the four went to Lambrix's trailer to eat spaghetti and carried with them a bottle of whiskey and some mixer; that Lambrix "wasn't drinking a whole lot" but was drinking "pretty good"; and that Lambrix "acted high" when they were back at the trailer, but "[i]t's hard to tell about Cary with anything... . I don't know if he was high or not."
2. John Chezem, a neighbor from whom Lambrix borrowed the shovel he used to bury the bodies, testified that on the night of the murders he "couldn't tell" if Lambrix was intoxicated. "He acted normal to me."
3. Preston Branch, a longtime acquaintance of Lambrix's, testified that he accompanied Lambrix from Plant City in Hillsborough County, back to the trailer, in Glades County, the day after the killing. He said Lambrix drank "at least two six-packs of beer" but did not consider him drunk.
The trial judge declined to give a jury instruction on the defense of voluntary intoxication. One of the grounds of the petition for habeas corpus later filed in this Court was that appellate counsel was ineffective for failing to argue on appeal that the court erred in refusing to instruct on voluntary intoxication. We rejected this argument on the premise that the evidence was not persuasive that Lambrix was intoxicated.
Lambrix now argues that trial counsel was ineffective (1) in failing to develop additional evidence that would have entitled him to obtain an instruction on voluntary intoxication, and (2) in not introducing evidence of Lambrix's alcoholism during the penalty phase of the trial.
In his motion for postconviction relief, Lambrix alleged that had they been asked by defense counsel several family members were prepared to testify concerning Lambrix's long history of drinking. He also asserted that Dr. Whitman, who had been appointed prior to trial to evaluate Lambrix's competency to stand trial and his sanity at the time of the offense, told defense counsel at that time that Lambrix suffered from substance abuse disorder and that alcohol abuse played a significant part in the offense. Finally, Lambrix alleged that he had been recently examined by an expert in addictionology who would testify that Lambrix suffers from alcohol dependency and that the amount of alcohol ingested by him on the night of the offense rendered him intoxicated to the extent that he was incapable of forming the specific intent necessary to a conviction of first-degree murder. Because we are passing on the facial sufficiency of the motion, we must accept the allegations of fact as true for purposes of this appeal.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the standard for obtaining relief on grounds of ineffectiveness of counsel:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. at 2064. We find it unnecessary to address whether the motion sufficiently alleges the ineffectiveness of trial counsel because we conclude that *1154 Lambrix has failed to meet the requirements of the second prong of the Strickland test.
At the outset, it should be noted that a jury instruction on the defense of voluntary intoxication need not be given simply because there is evidence that the defendant consumed alcoholic beverages prior to the commission of the offense. Jacobs v. State, 396 So.2d 1113 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). If the evidence shows the use of intoxicants but does not show intoxication, the instruction is not required. Linehan v. State, 476 So.2d 1262 (Fla. 1985). As a consequence, we are unable to conclude with any certainty that the proffered evidence would have even been admissible in the guilt phase of Lambrix's trial. Lambrix's relatives could not testify concerning Lambrix's condition when the killings were committed. Moreover, Dr. Whitman's proffered testimony would not have established the defense of voluntary intoxication. Assuming, without deciding, that defense counsel can be faulted for not having sought the opinion of an addictionologist, in order for such an expert to testify that Lambrix was so chemically dependent that he could not have formed the specific intent to commit this crime, it would have been necessary for him to know how much Lambrix had drunk on the night of the offense. Yet, the record shows nothing more than the fact that Lambrix had been drinking that evening. Finally, given the testimony of those who actually saw Lambrix on the night of the crime, we cannot say that there is a reasonable probability that the jury would not have found him guilty of first-degree murder even if it had received an instruction on voluntary intoxication.
With respect to the penalty phase, there is no doubt that testimony of Lambrix's relatives concerning his history of alcoholism as well as expert testimony of his chemical dependency would have been admissible. The question here is whether it would have made any difference. This was a double murder in which this Court approved the finding of four and five aggravating circumstances respectively. The five aggravating circumstances were: (1) the capital felony was committed by a person under sentence of imprisonment; (2) Lambrix was previously convicted of another capital felony; (3) the capital felony was committed for pecuniary gain; (4) the capital felony was especially heinous, atrocious, and cruel; and (5) the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Despite the fact that character testimony was presented during the penalty phase, the court found no mitigating circumstances with respect to either murder. We do not believe the introduction of the proffered testimony concerning Lambrix's alcoholism would probably have resulted in life imprisonment rather than a sentence of death.
We affirm the order denying the motion for postconviction relief. We decline to extend the stay of execution beyond the time set forth in our previous order. No motion for rehearing may be filed.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., dissents with an opinion, in which SHAW and BARKETT, JJ., concur.
KOGAN, Justice, dissenting.
Contrary to the opinion of the majority in this case, there is no record upon which a decision on the merits of Lambrix's claim could be based. The trial court did not hold an evidentiary hearing, thus we have nothing more than undeveloped allegations to guide us. We have no way of knowing whether counsel was ineffective or whether Lambrix was prejudiced by that deficiency. All we have before us is an allegation of ineffectiveness, which is sufficient to warrant at least an evidentiary hearing, unless the files and records of the case conclusively show that the petitioner is not entitled to relief. Fla.R.Crim.P. 3.850; Lemon v. State, 498 So.2d 923 (Fla. 1986). Nothing in the trial court's order denying relief in this proceeding indicates that this finding was *1155 made. I believe that such a hearing is mandated by the motions and pleadings, and therefore I dissent.
This is Lambrix's first rule 3.850 proceeding. There is no abuse of writ or procedural bar at work here. The rule 3.850 motion in the circuit court was the first opportunity Lambrix had to raise these claims. Absolutely no record has been developed which could shed light on the truthfulness of Lambrix's allegations.
The only question properly facing this Court is whether the motion sufficiently alleges ineffective assistance of counsel. This is not a question of fact, but rather it is a simple issue of legal sufficiency. The majority should not attempt to divine what the record would disclose had there been an evidentiary hearing.
Lambrix's rule 3.850 motion alleges the following facts:
1) Trial counsel's strategy was to establish voluntary intoxication.
2) The evidence at trial showed Lambrix had been drinking throughout the night of the murder, and appeared to be "high."
3) Trial counsel requested an instruction on voluntary intoxication, which was denied.
4) Voluntary intoxication is a valid defense to specific intent offenses such as first-degree murder.
5) Trial counsel made no attempt to develop testimony or evidence from family members, concerning his longstanding dependence on and addiction to both drugs and alcohol. Such testimony proves or tends to prove that the amount of alcohol ingested by Lambrix would have rendered him intoxicated.
6) Trial counsel failed to investigate or develop records relating to Lambrix's long incarceration history which indicated heavy alcohol abuse and dependency.
7) Trial counsel ignored testimony available to him from Dr. Whitman, a courtappointed psychiatrist, that Lambrix suffered from substance abuse disorder, and that alcohol played a significant role in the offense.
8) Experts in addictionology would testify at an evidentiary hearing, confirming Dr. Whitman's analysis that Lambrix suffers from uncontrolled and excessive alcohol abuse. These experts would also testify that the amount of alcohol ingested by Lambrix on the night of the murders was more than sufficient to render him intoxicated. Trial counsel failed to investigate this evidence, which, given Dr. Whitman's statements, renders his performance ineffective.
9) Lambrix was prejudiced by this deficiency because it deprived him of his only viable defense, that of voluntary intoxication. Had counsel investigated and prepared as he should have, the evidence would have been sufficient to warrant an instruction on voluntary intoxication.
Thus, Lambrix has set forth all the allegations necessary to facially sustain a rule 3.850 motion based on ineffective assistance of counsel. Assuming, as the majority concedes, that these allegations are true, they make a prima facie case of ineffectiveness. All that is required is a showing that counsel was deficient and that the deficiency prejudiced Lambrix. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If these allegations are true, trial counsel's deficiency deprived Lambrix of a fair trial. Counsel failed to sufficiently pursue the defense of voluntary intoxication, a defense which, if successful, would result in acquittal of first-degree murder. Lambrix's only viable defense in this case was voluntary intoxication. This failure works immeasurable prejudice upon Lambrix, foreclosing any possibility of a fair trial.
I fully disagree with the majority's conclusion that the proffered evidence would be inadmissible, though the opinion declines to give reasons for this inadmissibility. Having established that Lambrix was drinking "pretty good" throughout the evening and appeared to be "high," the proffered evidence would clearly be relevant to show what degree of alcohol consumption would be necessary for intoxication. The proffered statements link the evidence on the record that Lambrix had been drinking *1156 to the determination of whether he was intoxicated. This evidence is clearly relevant and admissible in the guilt phase of the trial.
With regard to the penalty phase, the majority embarks upon a harmless error analysis to determine whether the proffered evidence would have changed the judge's and jurors' minds on the appropriate penalty. It is axiomatic that any harmless error analysis consists of a review of the record in its entirety to determine whether, beyond a reasonable doubt, the proffered evidence would have made a difference in the outcome. It is necessary to hold an evidentiary hearing in order to have a record. Here, there is simply no record from which this Court can make this determination. The majority assumes the allegations contained in the motion are true, but states that it believes beyond a reasonable doubt that the jury would still recommend, and the judge would still impose, a sentence of death. Again, without the benefit of an evidentiary hearing and a fully developed record, such a determination is impossible.
For these reasons, I believe that an evidentiary hearing is necessitated by these allegations. I would grant the stay of execution and remand this matter for an evidentiary hearing on the issue of ineffective assistance of counsel.
SHAW and BARKETT, JJ., concur.