PER CURIAM.
We have consolidated all of Cary Michael Lambrix’s pending cases before this Court for the purposes of this opinion. The current proceedings involve the summary denial of Lambrix’s fourth successive motion for postconviction relief (SC10-1845) and the summary denial of his fifth successive motion for postconviction relief (SC12-6), both filed on the basis of newly discovered evidence. In addition, Lambrix filed a separate petition for a writ of prohibition, challenging the postconviction court’s denial of his motion to disqualify the judge (SC11-1845).
We conclude that both Lambrix’s fourth and fifth successive motions for postconviction relief are completely devoid of merit, as is his separate petition for a writ of prohibition. Further, as to Lambrix’s specific claim that the postconviction court abused its discretion in not allowing him to proceed without a lawyer, Lambrix’s pattern of conduct in postconviction proceedings alone demonstrates why Lambrix’s request for self-representation was properly denied.
FACTS AND PROCEDURAL HISTORY
As we recognized when reviewing the denial of relief as to Lambrix’s third successive postconviction motion, “[t]his death case, which has been in the judicial system for a substantial period of time, has a lengthy procedural history.” Lambrix v. State, 39 So.3d 260, 262 (Fla.2010). With these most recent filings, we observe that the lengthy procedural history is in part due to the continued attempts by Lambrix to file pleadings both with the postconviction court and with this Court that do not establish any viable claim pertaining to his guilt or the validity of the death penalty imposed, and his failure to provide any facts that would undermine confidence in the outcome of either the guilt or penalty phase of his trial.
Cary Michael Lambrix was convicted of two counts of first-degree murder and was sentenced to death for the 1983 murders of Clarence Moore and Aleisha Bryant, and we affirmed Lambrix’s convictions and sentences of death in 1986. Lambrix v. State, 494 So.2d 1143, 1148 (Fla.1986). In our latest opinion denying Lambrix post- *894 conviction relief, we detailed Lambrix’s extensive history of successive postconviction motions, all of which have been rejected as lacking in merit. See Lambrix, 39 So.3d at 264-65. In addition, up to the present, Lambrix has filed numerous extraordinary writ petitions, both through counsel and pro se, which this Court has either denied or dismissed. See, e.g., Lambrix v. State, No. SC10-1517, 2011 WL 2440379 (Fla. June 16, 2011) (unpublished order denying petition for writ of mandamus or prohibition); Lambrix v. State, 944 So.2d 345 (Fla.2006) (dismissing petition for writ of mandamus); Lambrix v. State, 900 So.2d 553 (Fla.2005) (dismissing petition for writ of mandamus); Lambrix v. State, 766 So.2d 221 (Fla.2000) (dismissing petition for writ of mandamus as moot); Lambrix v. State, 727 So.2d 907 (Fla.1998) (denying petition for writ of prohibition); Lambrix v. Reese, 705 So.2d 902 (Fla.1998) (denying petition for writ of mandamus).
Not only has Lambrix initiated numerous successive postconviction proceedings and petitions for extraordinary relief in this Court, but he has also filed successive petitions for a writ of habeas corpus in the federal courts. In 2010, the Eleventh Circuit Court of Appeals held that Lambrix failed to make a prima facie showing for filing his second federal habeas petition because he failed to show that the underlying factual predicate for any of the twelve claims presented in that proceeding could not have been discovered earlier through due diligence. In re Lambrix, 624 F.3d 1355, 1368 (11th Cir.2010).
Turning to the current proceedings, Lambrix has three cases currently pending before this Court. In case number SC10-1845, Lambrix’s appeal from the denial of his fourth successive motion for postcon-viction relief asserts that he is entitled to relief because two hairs on the murder weapon, which was wrapped in a shirt, are consistent with a key State witness, who helped him dispose of the bodies and the weapon. In case number SC12-6, the appeal of the denial of his fifth successive motion for postconviction relief that was also filed on the basis of newly discovered evidence, Lambrix contends that he recently discovered the whereabouts of his ex-wife, who could testify in greater detail regarding an injury that Lambrix suffered while he was in the army’s basic training, and that the effect of this injury should have been discussed in greater detail during his penalty phase. Finally, in case number SCI1-1845, Lambrix filed a separate petition for a writ of prohibition, challenging the postconviction court’s denial of his motion to disqualify the judge — a claim that is also raised on appeal from the denial of his fourth and fifth successive motions for postconviction relief in both case number SC10-1845 and case number SC12-6. We address each proceeding separately below, concluding that all of these proceedings are utterly without merit.
ANALYSIS
SC10-1845: Fourth Successive Postconviction Proceeding
In the appeal of the posteonvietion court’s denial of his fourth successive motion for postconviction relief, case number SC10-1845, Lambrix asserts that his private investigator discovered new records belonging to the Florida Department of Law Enforcement (FDLE) and that information within these records appears to demonstrate that there were two hairs found on the murder weapon that may match Frances Smith — a key State witness who was at the general location when the murders occurred and who helped to bury the bodies and hide the murder weapon (a tire iron). According to Lambrix, if the only biological materials found on the tire iron belong to Smith, this supports his *895 theory raised in prior postconviction proceedings that Smith was involved in a sexual affair with State Attorney Investigator Bob Daniels and helped to fabricate the murder weapon. Specifically, Lambrix raises the following claims: (1) he should be entitled to DNA testing of these hairs; (2) he is entitled to relief based on the newly discovered lab notes from the FDLE and evidence pertaining to the hairs and the shirt that were found with the murder weapon; and (3) the State committed a Brady/Giglio[1] violation when it failed to provide a complete set of FDLE lab notes and records to Lambrix. Lambrix also asserts that he was denied the opportunity to proceed pro se during the postconviction proceedings before the postconviction court, despite the fact that the court found him to be competent; that the judge erred in denying his motion to disqualify; and that section 119.19, Florida Statutes (2012), and Florida Rule of Criminal Procedure 8.852 are unconstitutional.[2]
As to the substance of the allegations, Lambrix attempts to resurrect his allegations from prior postconviction proceedings that there was a conspiracy against him because the State’s main witness, Frances Smith, allegedly had a one-time sexual encounter with the State’s investigator at some point. Lambrix now claims that the two conspired to fabricate evidence for trial. However, he fails to recognize that this Court already rejected his allegation that an affair occurred and concluded that, even if it had occurred, no prejudice was established because, based on the testimony presented at prior post-conviction proceedings, the alleged incident occurred during Lambrix’s second trial and Smith’s testimony at the second trial was substantially similar to testimony that she had previously given. Lambrix, 39 So.3d at 269-70. In addition, this Court further detailed the significant evidence against Lambrix, including his own testimony during an evidentiary hearing where even Lambrix acknowledged that he was present and had “struck one of the victims using a tire iron, although he denied that he intended to kill either victim.”' Id. at 273.
In the first claim we address on appeal, Lambrix seeks DNA testing on the hairs pursuant to Florida Rule of Criminal Procedure 3.853. The postcon-viction court denied this request, finding that Lambrix’s allegations were facially or legally insufficient because “he has failed to demonstrate how testing the hair[s] would exonerate him or mitigate his sentence,” particularly since Lambrix asserted he acted in self-defense and his theory of the hairs did not disprove any theory in this case. We review this ruling de novo. See Van Poyck v. State, 961 So.2d 220, 224 (Fla.2007).
In reviewing the postconviction court’s denial of the request in light of Lambrix’s allegations, we affirm the denial of relief. As this Court has recognized, “[i]t is the defendant’s burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate *896 the defendant of the crime or -will mitigate the defendant’s sentence.” Scott v. State, 46 So.3d 529, 533 (Fla.2009) (quoting Robinson v. State, 865 So.2d 1259, 1265 (Fla.2004)). Lambrix has completely failed to explain how finding Smith’s hair on the murder weapon would help exonerate him or even cast Smith’s testimony into doubt. Smith was at the murder scene after the murders occurred. According to her trial testimony, Lambrix was carrying the tire iron when he returned to the trailer alone and admitted to Smith that he killed both Bryant and Moore. Smith then helped to dispose of the bodies and the weapon. Thus, it would not be unexpected that her hairs could also be on the weapon, as she was present at the scene and helped to hide the weapon. As this Court has previously held, a trial court does not err in denying a motion for DNA testing where the defendant cannot show that there is a reasonable probability that the absence or presence of DNA at a crime scene would exonerate him or lessen his sentence. Scott, 46 So.3d at 533. Accordingly, we deny this claim.
In his second claim, Lambrix asserts that the postconviction court erred in denying his newly discovered evidence claim regarding the FDLE notes and evidence pertaining to the hairs and the shirt that were found with the murder weapon. We disagree because this evidence does not meet the test for newly discovered evidence.
To set aside a conviction based on newly discovered evidence, the defendant must show the following: (1) the asserted facts “must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence”; and (2) the newly discovered evidence “must be of such nature that it would probably produce an acquittal on retrial.” Wyatt v. State, 78 So.3d 512, 523 (Fla.2011) (quoting Jones v. State, 709 So.2d 512, 521 (Fla.1998)). In reviewing the record and Lam-brix’s allegations, we conclude that Lam-brix has failed to show that this evidence would probably produce an acquittal or would mitigate his sentence. Lambrix’s identity was never genuinely disputed in this case since Lambrix admitted that he was present at the murder scene and asserted that he merely acted in self-defense. As the postconviction court aptly recognized, establishing that the hairs came from someone else does not disprove any theory in this case “because it is impossible to establish when or how the hairs may have become attached to the murder weapon or the t-shirt it was wrapped in.” Lam-brix is therefore not entitled to relief on this claim.
In his third claim, Lambrix contends that the State violated Brady and Giglio by failing to disclose certain FDLE documents pertaining to these hairs. The postconviction court denied relief. We affirm the denial because Lambrix has completely failed to allege how any of the three Brady prongs have been met, including how the documents could constitute favorable evidence in any manner. Likewise, he has also failed to allege how the facts he points to would constitute a Giglio violation. Because Lambrix’s claims as to both a Brady violation and a Giglio violation rely entirely on speculation and conjecture, we deny relief.
We now address in turn the two other issues raised in Lambrix’s appeal of the denial of his fourth successive motion for postconviction relief. Initially, Lambrix challenges the denial of his motion to disqualify the postconviction judge, alleging that a staff attorney who worked for the Twentieth Judicial Circuit Court represented Lambrix at some time in the past. *897 Because of the nature of these allegations, we remanded the case for an evidentiary hearing, which was held.[3]
We reject Lambrix’s argument that the postconviction court was obligated to accept the truth of the allegations, as we already determined that the trial judge in this case was a successor judge. In reviewing an order denying a successive motion to disqualify, this Court evaluates “whether the record clearly refutes the successor judge’s decision to deny the motion.” Kokal v. State, 901 So.2d 766, 774 (Fla.2005) (quoting Pinfield v. State, 710 So.2d 201, 202 (Fla. 5th DCA1998)).
The allegations against the postconviction judge arose out of the claim that one of the staff attorneys working, for the Twentieth Judicial Circuit Court had previously assisted Lambrix on his case. At the evidentiary hearing, however, Lambrix failed to present any evidence that the staff attorney in question ever assisted Lambrix in challenging his criminal convictions. At the most, the evidence established that the staff attorney may have attempted to solicit general legal work outside of her employment with the Twentieth Judicial Circuit Court and may have answered a general inquiry about how an inmate could obtain cholesterol medication in the prison system.
After listening to the testimony and evaluating the credibility of the witnesses, the postconviction court stated as follows:
The significant concerns raised by the Defendant’s allegations regarding the Staff Attorney are refuted or unsupported by the evidence and testimony presented at the evidentiary hearing. Although third parties alleged to have been indirectly working on the Defendant’s behalf, namely Hickey and Pa-velchak, suggest that the Staff Attorney provided legal advice for which she was paid, these allegations were refuted by the testimony of the Staff Attorney.
A persistent theme throughout the Defendant’s motion is the allegation that the Staff Attorney identified during the May 2010 case management conference previously worked for or served as an Assistant State Attorney. The only evidence offered on this issue was the un-controverted testimony of the Staff Attorney unequivocally stating that she never worked for the State Attorney’s Office. Accordingly, this alleged definitive fact extensively relied upon by Defendant in support of his motion is unfounded.
*898 [[Image here]]
Even though the Defendant alleges in his motion that the Staff Attorney had conducted certain investigations into his case, the testimony of Pavelchak suggests, at most, only an inquiry into a limited issue unrelated to the Defendant’s criminal case, namely an issue that the Defendant was having with the DOC regarding the administration of his cholesterol medication. Notably, Defense Exhibit 2 reflects only that which appears to be a cursory response to a procedural question as to how to compel the DOC to provide an unidentified inmate with medication. Pavelchak testified that she sent a $20.00 money order to the Staff Attorney, but, even though the Defendant represents in his motion that he can produce copies of money receipts, no such money receipts were presented nor offered into evidence.
The Staff Attorney testified that she did not recognize the e-mails reflected in Defense Exhibits 1 or 2 and never received a money order from Pavelchak. The Staff Attorney further affirmatively testified that she had never worked for the Defendant, had never taken any legal work on behalf of the Defendant, and had never been contacted by anyone asking her to work on the Defendant’s case.
The court then found that the claim regarding the staff attorney for the Twentieth Judicial Circuit Court was unsupported.
We affirm the postconviction court’s denial of the motion, as the record does not clearly refute the successor judge’s decision to deny the motion. See Kokal, 901 So.2d at 774. Moreover, even if the e-mails are taken as accurate, the emails themselves do not establish that the staff attorney was working on or had ever worked on Lambrix’s criminal case. Therefore, these e-mails would not mandate that a judge working at the same circuit court would need to disqualify herself from the case. Thus, Lambrix is not entitled to relief on this claim.
In the last issue on appeal pertaining to the fourth successive postconviction motion, Lambrix claims that the postconviction court erred in denying his request to represent himself. We disagree and affirm that denial as well. Lambrix initially filed a pro se motion to have his counsel discharged in 2009, well over a decade after his initial postconviction motion was denied. A hearing was held on July 31, 2009, where Lambrix presented detailed complaints to Judge Thomas Corbin, alleging that his CCRC-appointed counsel was ineffective during the investigation relating to the newly discovered FDLE lab documents and failed to file certain claims in a timely manner after discovering them. At the time, Lambrix asserted that he was seeking the appointment of alternative counsel and had “no intention of waiving the statutory right to postconviction counsel before the proceedings in the lower court.” Judge Corbin denied the motion in open court, finding that CCRC was rendering competent representation and that there was no basis to discharge counsel. On September 1, 2009, Lambrix filed a pro se motion to disqualify Judge Cor-bin, which was denied, and on October 7, 2009,. the Chief Judge of the Twentieth Judicial Circuit removed Judge Corbin and reassigned the case to Judge Christine Greider, who is the current postconviction judge presiding.
In September 2009, Lambrix filed a civil complaint under 42 U.S.C. § 1983 against numerous individuals, including CCRC, the Clerk of the Florida Supreme Court, and then-Chief Justice Quince. In this pleading, he alleged in part that his counsel was involved in a conspiracy against him in an *899 effort to obstruct his constitutional rights. Defense counsel filed a motion to withdraw from representing Lambrix in ongoing postconviction proceedings, stating that based on Lambrix’s pro se civil complaint, he had a conflict of interest. Lambrix filed a pro se motion, seeking the right to waive postconviction counsel and represent himself. The court held a hearing, with Lambrix appearing telephonically. During the hearing, Lambrix stated that he wanted to represent himself, that he understood the consequences, and that he had no mental or physical disabilities that would hinder him from representing himself. When he was asked whether he understood that if he waived postconviction counsel, it was not guaranteed that post-conviction counsel would be reappointed later, Lambrix asserted that he understood this and discussed opinions from this Court in detail regarding his right to represent himself. He stated as follows:
I just want, I think that needs to be clear, because in the event that a death warrant is signed in the future on me, or in the event that circumstances that I’m not aware of today develop to the point that I can no longer adequately pursue these postconviction claims, then they [sic] will be my intent to assert my right to post-conviction representation.
(Emphasis added.) At the time of that hearing, Lambrix did not appear to have competency issues.[4]
The postconviction court subsequently denied Lambrix’s request to discharge counsel and proceed without legal representation. We conclude that the postconviction court did not abuse its discretion in denying Lambrix’s right to represent himself.
Lambrix possesses no constitutional right to proceed unrepresented at this stage of the postconviction proceedings. While a defendant has a constitutional right to self-representation and self-determination at trial, these rights do not continue to the same degree after the conviction. As the United States Supreme Court clarified in Martinez v. Court of Appeal of California, 528 U.S. 152, 154, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), a convicted defendant does not have a federal constitutional right of self-representation on an initial appeal of right. In other words, a defendant’s federal constitutional right to self-representation ends when he or she has been convicted. Likewise, after the conviction is affirmed on direct appeal, a defendant’s right to self-determination must be balanced with this Court’s obligations to ensure reliability, fairness, and uniformity in the imposition of the death penalty. See generally Muhammad v. State, 782 So.2d 343, 364 (Fla.2001).
We emphasize that a defendant continues to have a right to self-determination during postconviction pro- *900 ceedings, and this Court will not force counsel on a defendant who does not seek to challenge his or her convictions after the convictions have been affirmed, so long as the defendant is competent to make that decision and the waiver is knowing and voluntary. James v. State, 974 So.2d 365, 367 (Fla.2008); Durocher v. Singletary, 623 So.2d 482, 484-85 (Fla.1993). Any right of self-determination and self-representation during postconviction proceedings, however, does not outweigh this Court’s solemn duty to ensure that the death penalty is imposed in a fair, consistent, and reliable manner, and to guarantee this Court’s administrative responsibility to minimize delays in the postconviction process. See Gordon v. State, 75 So.3d 200, 203 (Fla.2011) (holding that based on these policy considerations, death-sentenced appellants may not appear pro se when appealing the denial of relief in post-conviction proceedings). In addition, a defendant does not have the right to disrupt the judicial system, frustrate the administration of justice, or prevent his or her case from being litigated. See, e.g., McCray v. State, 71 So.3d 848, 868 (Fla.2011) (“[T]he trial court has the power to terminate a defendant’s self-representation if he continues to abuse the court system.”), cert. denied, — U.S. -, 132 S.Ct. 1743, 182 L.Ed.2d 536 (2012).
At this point, Lambrix appears to have exhausted all permissible legal remedies in his case. Specifically, counsel has filed (or adopted) five successive motions for post-conviction relief, as well as numerous motions for habeas relief — both at the state and federal level — and numerous original writs. Permitting Lambrix to waive counsel now, especially when he specifically stated that he would like the opportunity for counsel if a death warrant is signed in the future, would only create delays at the point when a death warrant is signed, as counsel would then need to be appointed and to have an opportunity to become familiar with the case. Further, the only purpose in allowing Lambrix to proceed pro se at this time would be to give him further ability to continue to file pleadings that to date have consistently lacked merit. At least with counsel to represent him, there will be the requirement that counsel has a good faith belief that the allegations are not completely devoid of merit. See generally R. Reg. Fla. Bar 4-3.1 (“A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.”). Thus, any right to self-representation Lambrix may have does not outweigh the risk of substantial interference with the administration of the death penalty presented in this case.
Accordingly, for all these reasons, we affirm the denial of Lambrix’s motion to proceed pro se and conclude that the post-conviction court did not err in denying Lambrix’s fourth successive motion for postconviction relief in full.
SC12-6: Fifth Successive Postconviction Proceeding
As to Lambrix’s fifth successive motion for postconviction relief, which the post-conviction court summarily denied, we likewise affirm this denial of relief. This successive motion addresses additional mitigation that Lambrix asserts he was unable to present during the penalty phase of his trial.[5] Specifically, Lambrix argues *901 that he is entitled to relief because he recently was able to locate his ex-wife, who allegedly made herself deliberately unavailable until now, and she has prepared an affidavit discussing the injury that Lambrix suffered during the army’s basic training, which caused him debilitating pain and led him to self-medicate by turning to alcohol and illicit drugs. In addition, Lambrix presented a decision by the Board of Veterans’ Appeals and -a report by privately retained defense expert Dr. Thomas M. Hyde.
Lambrix argues that this “newly discovered evidence” establishes that he is “an honorably discharged military veteran who has suffered a substantial physical injury and resulting disability while serving his country in the United States Army.” He believes that if the jury had' heard the information about his injury and how the effects of the chronic pain from that injury led him to substance abuse, it would have compelled the jury to recommend a life sentence, thereby rendering his death sentence disproportionate. In support, Lam-brix relies on Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009), contending that this case stands' for the premise that the failure to allow a jury to hear evidence of a physical disability sustained during military service renders the sentence constitutionally unreliable.
We conclude that Lambrix is not entitled to relief. As this is a successive post-conviction motion filed more than one year after the convictions and sentences became final, in order for this newly discovered evidence claim to be reviewed on the merits, Lambrix must show that the new evidence was not known to himself or his attorney and “could not have been ascertained by the exercise of due diligence.” See Fla. R.Crim. P. 3.851(d)(2)(A). “To'be considered timely filed as newly discovered evidence, the successive rule 3.851 motion was required to have been filed within one year of the date • upon which the claim became discoverable through due diligence.” Jimenez v. State, 997 So.2d 1056, 1064 (Fla.2008).
In this case, in both his fifth successive postconviction motion before the postcon-viction court and in his briefing before this Court, Lambrix acknowledges that he and his trial counsel knew of Lambrix’s injury. Yet, he asserts that he was unable to raise the claim until now because his “trial counsel simply did not have available the evidence that would have established this substantial mitigation.” Lambrix recognizes in this successive motion that he knew about the underlying facts of- this claim all along and that “Lambrix himself could have provided testimony concerning the extent of his military injury and the resulting disability, including a description of how the chronic physical pain from the injury resulted in a substantial escalation in self-medication and chronic substance abuse.” However, he contends that “he was prevented from [testifying] by actions of the trial court and trial counsel.” Lam-brix acknowledges that he actually raised this issue previously, both in state and federal postconviction challenges, but that his claim has been denied.
Specifically, in prior litigation, Lambrix asserted that during the guilt phase of his first trial, his counsel told the trial judge to inform Lambrix that if Lambrix chose to testify in his own defense during the guilt phase, his counsel would withdraw and the court would not appoint new counsel for Lambrix. Thus, Lambrix- contends that he was denied his fundamental right to testify. The Eleventh Circuit rejected this claim, stating as follows:
*902 Lambrix argues that he was denied the fundamental right to testify on his own behalf because his counsel and the judge coerced him into choosing between his right to testify and his right to counsel. The evidence which Lambrix presents on this issue relates only to events which occurred during his first trial. Even if we concluded that Lambrix was denied his right to testify during his first trial, the appropriate remedy would be to grant a new trial. Therefore, because Lambrix has already received a second trial, this issue is moot.
Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir.1996) (citations omitted). The Eleventh Circuit noted that there was no evidence at all regarding any person who prevented Lambrix from testifying during the second trial, which occurred two months after his first trial ended in a hung jury. Id. Moreover, to the extent that Lambrix’s counsel advised Lambrix against testifying in the first trial, this advice pertained only to Lambrix’s testimony concerning the guilt phase (at the first trial only), where Lambrix sought to tell the jury his version of how the victims died.
In other words, the claim that Lambrix was prevented from testifying at trial has been litigated and denied. Even if Lam-brix believed that he could not testify during the penalty phase at his second trial, this does not explain why he failed to present this claim in his initial postconviction motion. Lambrix clearly had the necessary knowledge pertaining to this claim, but failed to raise it at all, until his current attempt to resurrect this procedurally barred claim by pointing to a new witness he contends that he did not discover until now. In addition, he presents a decision by the Board of Veterans’ Appeals and an expert who could testify regarding his injury. Since Lambrix and his counsel knew of the injury at trial, they could have at any time hired the expert now retained to support Lambrix’s assertion.
In sum, this claim is clearly time-barred. Lambrix is attempting to raise the claim now, asserting that he has just found a new witness who would have helped present additional testimony on this claim. In addition, he attempts to argue it in conjunction with other claims that he previously argued, including that he was prohibited from testifying at trial and his prior claim that his counsel was ineffective in not presenting evidence pertaining to his addiction and alcoholism. As this Court has repeatedly held, a defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions. See, e.g., Jones v. State, 591 So.2d 911, 913 (Fla.1991).
Further, the claim is completely lacking in merit as a newly discovered evidence claim because there is no probability that if this evidence had been introduced, it would have resulted in a life sentence. As the postconviction court observed:
Of the specific evidence Defendant mentions, none would result in acquittal or a lesser sentence. Even had the additional details relating to Defendant’s injury been presented at trial, and even had Ms. Martin testified, such information would have no reasonable likelihood of changing the outcome of the trial. That Defendant suffered a back injury during basic training and chose to abuse drugs and alcohol in self medication for his pain would not change the outcome, as there was sufficient evidence that Defendant committed the two murders for the jury to find Defendant guilty and to recommend the death penalty, and such additional mitigating evidence would not have outweighed the aggravating factors. The Florida Supreme Court found that “We do not believe the introduction *903 of the proffered testimony concerning Lambrix’s alcoholism would probably have resulted in life imprisonment rather than a sentence of death.” Lambrix v. State, 534 So.2d 1151, 1154 (Fla.1998[1988]). The Eleventh Circuit also found trial counsel’s strategy of downplaying Defendant’s substance abuse in order to focus on good character was reasonable. Lambrix v. Singletary, 72 F.3d 1500, 1504 (11th Cir.1996). Defendant presented evidence regarding his substance abuse during trial and during postconviction proceedings, and was not found to be sufficiently mitigating so as to outweigh the aggravating circumstances. Evidence regarding the background of Defendant’s drug and alcohol abuse, that they resulted from, or were exacerbated by, the back injury during his uncompleted basic training, would not ... increase the weight of that mitigation so as to outweigh the aggravating factors. Such information, if introduced at a new trial, would not be likely to result in a lesser sentence. Defendant has failed to meet either requirement for a claim that his conviction and sentence should be set aside because of newly discovered evidence. As the information is not newly discovered evidence, the current motion is untimely. Further, since this information was already presented, although not with the thoroughness Defendant now wishes, this motion is successive and procedurally barred. Aldridge v. State, 503 So.2d 1257, 1258 (Fla.1987); Buenoano v. State, 708 So.2d 941, 951 n. 8 (Fla.1998); Grossman v. State, 29 So.3d 1034, 1042 (Fla.2010); Jennings v. State, 782 So.2d 853, 860 (Fla.2001).
While Lambrix attempts to rely on Porter, 558 U.S. at 33-36,130 S.Ct. 447 this case is not remotely similar to that case, in which Porter’s counsel failed to discover or present evidence that Porter endured significant child abuse on a weekly basis, enlisted in the army to escape the abuse, and was involved in two major “horrifying” engagements during the Korean War, where he was both wounded and decorated for his active participation. Porter’s combat service unfortunately left him a traumatized, changed man. Id. In contrast, in this case, during basic training, Lambrix fell down a flight of stairs and was honorably discharged. Accordingly, we affirm the denial of relief.
SC11-1845: Petition for Writ of Prohibition
As to the petition for a writ of prohibition, case number SC11-1845, challenging the denial of his motion to disqualify, Lam-brix’s motion was based on the same allegations we previously discussed regarding the Twentieth Judicial Circuit Court’s staff attorney, as well as on rulings that Judge Greider made in the course of presiding over this case and on the fact that Judge Greider was a long-time assistant state attorney. To the extent that Lambrix asserts that Judge Greider erred in denying the motion to disqualify based on the claim that the staff attorney was involved with Lambrix’s prior legal cases, this claim has already been addressed and rejected in our discussion of case number SC10-1845 and, for the reasons addressed in that part of our analysis, this claim is without merit.
In addition, Lambrix asserts that Judge Greider ruled in an adverse manner with regard to his motion to discharge counsel and represent himself and that she improperly denied his motion for DNA testing. As this Court has repeatedly held, “[t]he fact that a judge has previously made adverse rulings is not an adequate ground for recusal.” Mansfield v. State, 911 So.2d 1160, 1171 (Fla.2005) (quoting Jackson v. State, 599 So.2d 103, 107 (Fla.1992)). Finally, Lambrix asserts as a ba *904 sis for disqualification that Judge Greider previously worked as an assistant state attorney. This Court has expressly rejected the claim, however, that a judge’s “former employment as a prosecutor [i]s legally sufficient for disqualification.” Arbelaez v. State, 775 So.2d 909, 916 (Fla.2000). Thus, we deny the petition for a writ of prohibition.
CONCLUSION
Based on the above analysis, we affirm the summary denial of Lambrix’s fourth successive motion for postconviction relief (SC10-1845), affirm the summary denial of his fifth successive motion for postconviction relief (SC12-6), and deny the petition for a writ of prohibition challenging the postconviction court’s denial of his motion to disqualify (SC11-1845).
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, CANADY, LABARGA, and PERRY, JJ., concur.
QUINCE, J., is recused.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

. As this Court has consistently upheld the constitutionality of section 119.19 and rule 3.852, we deny Lambrix’s constitutional challenge to section 119.19 and rule 3.852 without further discussion. See, e.g., Wyatt v. State, 71 So.3d 86, 111 (Fla.2011) (denying claim that these provisions unconstitutionally restrict a defendant’s right to public-records access because they impermissibly mandate that his demand for public records not be "overly broad or unduly burdensome” and that he make his own search for records).

. Upon initial review of these allegations, this Court relinquished jurisdiction, stating as follows:
In his motion, among other claims, [Lam-brix] alleged that on May 27, 2010, Lambrix learned that the staff attorney who was personally participating in the case, had previously been hired by Lambrix to conduct certain investigations in Lambrix's case and that she had received monetary payment in exchange for information and legal advice that she gave to him. CCRC subsequently adopted the motion. The judge denied this motion as being untimely, and that even if the court had treated it as a new motion to disqualify, it would be legally insufficient.
The allegations in the motion, if true, raise significant concerns. Therefore, upon review of the assertions contained in the motion to disqualify, the Court has determined that it should relinquish jurisdiction in this case for further consideration. Pursuant to Florida Rule of Judicial Administration 2.330(g), "a successor judge may rule on the truth of the facts alleged in support of the motion.”
Accordingly, we hereby temporarily relinquish jurisdiction to the lower tribunal for thirty days for the‘narrow purpose of addressing the motion to disqualify.
Lambrix v. State, No. SC10-1845, Order at 1 (Fla. Sup.Ct. order filed Jan. 4, 2012). Justice Canady dissented from this order and would have denied the motion as untimely.

. Although Lambrix did not appear to have any competency issues at the time of the hearing, he appears to have since been consumed by thoughts of wide-reaching conspiracy and has filed many more pro se pleadings to this effect. In case number SC 10-1845 alone, Lambrix has filed the following pro se pleadings: (1) pro se motion to stay proceedings pending this Court’s disposition of pending petition for writ of mandamus/prohibition: (2) pro se renewed motion to unequivocally waive postconviction representation as a means of discharging incompetent collateral counsel acting under substantial conflict of interest; and (3) pro se motion to compel court to monitor performance of counsel in capital case in which appellant previously asserted and unequivocally waived collateral representation under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). His counsel now alleges that competency may be an issue in this case and requested the Court to remand for competency proceedings, if Lambrix is permitted to waive counsel.

. Lambrix also contends that the postconviction court erred in denying his motion to disqualify the judge, asserting the same issue pertaining to the staff attorney, which we already addressed above. As this claim is meritless, we hold that Lambrix is not entitled *901 to relief for the reasons we have already detailed.