# Supreme Court of Florida

_____

No. SC17-1608
_____

**CARY MICHAEL LAMBRIX,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[September 26, 2017]

PER CURIAM.

Cary Michael Lambrix, a/k/a Michael Ray Lambrix, a prisoner under a sentence of death for the 1983 murders of two victims—Aleisha Bryant and Clarence Moore, Jr., a/k/a Lawrence Lamberson—whose execution is scheduled for October 5, 2017, petitions this Court for a writ of habeas corpus. See Lambrix v. State, 494 So. 2d 1143, 1145 (Fla. 1986). We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons fully explained below, we deny Lambrix's petition for a writ of habeas corpus.

## BACKGROUND

On direct appeal, this Court explained the facts underlying Lambrix's crimes:

> On the evening of February 5, 1983, Lambrix and Frances Smith, his roommate, went to a tavern where they met Clarence Moore, a/k/a Lawrence Lamberson, and Aleisha Bryant. Late that evening, they all ventured to Lambrix'[s] trailer to eat spaghetti. Shortly after their arrival, Lambrix and Moore went outside. Lambrix returned about twenty minutes later and requested Bryant to go outside with him. About forty-five minutes later Lambrix returned alone. Smith testified that Lambrix was carrying a tire tool and had blood on his person and clothing. Lambrix told Smith that he killed both Bryant and Moore. He mentioned that he choked and stomped on Bryant and hit Moore over the head. Smith and Lambrix proceeded to eat spaghetti, wash up and bury the two bodies behind the trailer. After burying the bodies, Lambrix and Smith went back to the trailer to wash up. They then took Moore's Cadillac and disposed of the tire tool and Lambrix'[s] bloody shirt in a nearby stream.

Lambrix, 494 So. 2d at 1145. Lambrix's sentences of death became final in 1986 and have been litigated continuously since that time.[1]

---

1. See Lambrix v. State, 217 So. 3d 977 (Fla.), petition for cert. filed, No. 17-5539 (U.S. Aug. 9, 2017); Lambrix v. State, 139 So. 3d 298 (Fla.), cert. denied, 135 S. Ct. 174 (2014); Lambrix v. State, 124 So. 3d 890 (Fla. 2013), cert. denied, 134 S. Ct. 1789 (2014); Lambrix v. State, 39 So. 3d 260 (Fla. 2010), cert. denied, 562 U.S. 1145 (2011); Lambrix v. State, 698 So. 2d 247 (Fla. 1996), cert. denied, 522 U.S. 1122 (1998); Lambrix v. Singletary, 641 So. 2d 847 (Fla. 1994); Lambrix v. State, 559 So. 2d 1137 (Fla. 1990); Lambrix v. State, 534 So. 2d 1151 (Fla. 1988); Lambrix v. Dugger, 529 So. 2d 1110 (Fla. 1988); see also In re Lambrix, 136 S. Ct. 541 (2015); In re Lambrix, 563 U.S. 1007 (2011); Lambrix v. Sec'y, Dep't of Corrs., 851 F.3d 1158 (11th Cir.), petition for cert. filed, No. 17-5153 (U.S. July 12, 2017); In re Lambrix, 776 F.3d 789 (11th Cir. 2015); Lambrix v. Sec'y, Fla. Dep't of Corrs., 756 F.3d 1246 (11th Cir. 2014), cert. denied, 135 S. Ct. 1894 (2015); In re Lambrix, 624 F.3d 1355 (11th Cir. 2010); Lambrix v.

As this Court has stated, Lambrix's "death case . . . has been in the judicial system for a substantial period of time." Lambrix v. State, 39 So. 3d 260, 262 (Fla. 2010). This Court has explained that "the lengthy procedural history [in Lambrix's case] is in part due to the continued attempts by Lambrix to file pleadings both with the postconviction court and with this Court that do not establish any viable claim pertaining to his guilt or the validity of the death penalty imposed." Lambrix v. State, 124 So. 3d 890, 893 (Fla. 2013); see Lambrix v. State, 217 So. 3d 977, 988 (Fla.), petition for cert. filed, No. 17-5539 (U.S. Aug. 9, 2017). Indeed, despite this Court determining in 2013 that Lambrix had "exhausted all permissible legal remedies in his case," Lambrix has continued to raise repetitive state and federal claims. Lambrix, 124 So. 3d at 900.

After the Governor scheduled Lambrix's execution for February 11, 2016, Lambrix had yet another opportunity to challenge his convictions and sentences. See generally Lambrix, 217 So. 3d 977. This Court stayed Lambrix's execution to address the application of Hurst v. Florida, 136 S. Ct. 616 (2016), to his case. Lambrix, 217 So. 3d at 980. After considering Lambrix's various arguments, this Court affirmed the circuit court's denial of Lambrix's successive motion for

_____

Singletary, 72 F.3d 1500 (11th Cir. 1996), aff'd, Lambrix v. Singletary, 520 U.S. 518 (1997).

postconviction relief, denied Lambrix's separate petition for a writ of habeas corpus, and lifted the stay on Lambrix's execution.  Id. at 989-90.

## ANALYSIS

In his pending petition, filed on August 31, 2017, the day before his current execution was rescheduled, Lambrix raises the following claims: (1) based on the constitutional prohibition against the execution of an innocent person and fundamental principles of due process, he is entitled to a cumulative review of all the evidence which will establish a truly persuasive showing of his actual and legal innocence; (2) this Court must fully address the denial of Lambrix's right to testify; and (3) Lambrix was unconstitutionally denied access to materials that may contain DNA evidence.  The State argues that Lambrix's claims lack merit and are improper as duplicative of formerly litigated claims.

## I.  Cumulative Review of Evidence Supporting Actual and Legal Innocence

In his first claim, Lambrix contends that "Florida law provides an avenue for state court review of [his] claims of actual and legal innocence."  Pet. for Writ of Habeas Corpus, Lambrix v. Jones, No. SC17-1608, at 10.  Specifically, Lambrix argues that neither the jury in his case, nor any state or federal court, has ever conducted a cumulative review of "all the readily available evidence" that would "establish that Lambrix is actually or legally innocent of each of the two murders."  Pet. at 15-16.

- 4 -

Lambrix claims that Moore killed Bryant, and he, in turn, killed Moore in self-defense. This belated theory of self-defense emerged three years after the actual trial (1984) at his first clemency proceeding (1987), when clemency counsel provided a "live transcribed statement" which he claimed "included a description of Lambrix's account." Pet. at 29. Lambrix later testified to this theory at an evidentiary hearing on his successive postconviction motion, as we explained in our 2010 opinion:

> According to Lambrix, he told Smith the following account: after he invited both victims outside, Bryant and Moore began to fight, so Lambrix attempted to leave. On his way back, he heard a scream, grabbed a tire iron, and ran back. He saw Moore straddling Bryant and tried to push him off. Moore attempted to "come at [him]," so he continued to swing the tire iron at Moore until he realized that Moore "was down." He denied that he ever admitted to killing either victim on purpose.

Lambrix, 39 So. 3d at 271.

There is no evidence, other than Lambrix's self-serving belated assertions of self-defense, that supports his theory. In fact, in his initial postconviction motion, his appeal from the circuit court's denial of his initial postconviction motion, and his initial petition for a writ of habeas corpus, Lambrix's arguments focused on "his consumption of alcohol" the night of the crimes and the defense of voluntary intoxication. Lambrix v. State, 534 So. 2d 1151, 1151 (Fla. 1988); see Lambrix v. Dugger, 529 So. 2d 1110 (Fla. 1988). This Court denied the petition

for a writ of habeas corpus, concluding that the "evidence was not sufficient to show intoxication." Lambrix, 529 So. 2d at 1112.

As part of his claim of actual innocence, Lambrix alleges that certain evidence entitles him to an evidentiary hearing at which he would prove his innocence: (1) inconsistencies in and lack of credibility for witness Frances Smith's testimony, (2) witness Deborah Hanzel's recantation, and (3) his consistent claim of self-defense. Lambrix also argues that the denial of his right to testify and denial of access to DNA evidence contribute to his innocence claim. We address these arguments in Claims II and III, respectively, below. After reviewing this Court's prior opinions regarding Lambrix's assertions, we address the specifics of Lambrix's freestanding claim of innocence.

### A. Frances Smith's Testimony

As to Smith, Lambrix argues that newly discovered evidence discredits her testimony, which was the lynchpin of the State's case at trial. On direct appeal, this Court denied Lambrix's claim that the trial court erred by limiting his cross-examination of Smith. Lambrix, 494 So. 2d at 1146-47. Lambrix also raised this claim in the federal district court, which denied the claim. See Lambrix v. Dugger, No. 88-12107-Civ-Zloch (S.D. Fla. May 12, 1992). On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the denial. Lambrix v. Singletary, 72 F.3d 1500, 1503 & n.3 (11th Cir. 1996), aff'd, 520 U.S. 518 (1997).

In his third postconviction motion, Lambrix argued that the State withheld exculpatory or impeachment evidence involving a sexual relationship between Smith and a state attorney investigator. Lambrix, 39 So. 3d at 266. Reviewing the trial court's finding that no sexual relationship occurred, this Court determined that even if a sexual relationship existed, Lambrix could not show prejudice. Id. at 269. The Eleventh Circuit also denied this claim and others related to Smith's testimony in denying Lambrix's application for leave to file a second or successive federal habeas petition alleging the existence of new claims. In re Lambrix, 624 F.3d 1355, 1358, 1368 (11th Cir. 2010).

In his fourth postconviction motion, Lambrix argued that new evidence showed that two hairs found on the murder weapon matched Smith's DNA. Lambrix, 124 So. 3d at 894-95. This Court affirmed the postconviction court's denial of Lambrix's motion, holding that Lambrix failed to explain how Smith's hair would exonerate him or even cast doubt on Smith's testimony. Id. at 895-96.[2]

### B. Deborah Hanzel's Recantation

As to witness Deborah Hanzel, Lambrix argues that she is the only witness at trial who corroborated Smith's testimony of Lambrix's confession to killing the victims. He also contends that her subsequent recantation supports his claim of

---

2. Lambrix again sought leave to file a successive federal habeas petition under 28 U.S.C. § 2244(b)(2)(B), which was likewise denied by the Eleventh Circuit. See In re Lambrix, 776 F.3d 789, 797 (11th Cir. 2015).

actual innocence. In 2010, this Court reviewed Lambrix's claim that "the postconviction court erred in failing to find that witness Deborah Hanzel recanted and that Smith and a state agent coerced her to lie." Lambrix, 39 So. 3d at 270. This Court explained that "Hanzel was one of the witnesses who testified at both the initial trial and the second trial as to certain incriminating statements that Lambrix allegedly made." Id. Later, during successive postconviction proceedings, Hanzel made statements—both written and oral—that contradicted her testimony at trial. Id. at 271. After holding two evidentiary hearings, the postconviction court determined that "Hanzel's testimony never met the legal requirements for a recantation." Id. at 271-72.

Upon review, this Court determined that the postconviction court's findings were supported by competent, substantial evidence. Id. at 272. Further, this Court determined that "if Hanzel had not testified at trial that Lambrix stated he killed two people, the recantation would not be of such a nature that it would 'probably produce an acquittal or retrial.' " Id. This Court reasoned:

> Hanzel was not the main witness to testify against Lambrix. Even without her testimony, there would still be the testimony of Lambrix himself at this most recent evidentiary hearing that he struck one of the victims using a tire iron, although he denied that he intended to kill either victim. Further, there was other significant evidence at the trial that pointed to Lambrix as the perpetrator of these murders. This evidence included the following: Smith's testimony regarding the murders and that Lambrix threatened her if she did not help him bury the bodies; Deputy Sheriff Ron Council's testimony that he saw Lambrix and Smith with the victims on the night of the murders; John

Chezum's testimony that on February 6 around 2:30 in the morning, Lambrix drove up in a car that resembled the victims' car and asked to borrow a shovel; and the victims were found buried near the trailer in which Lambrix was living.

Id. at 273.

### C. Self-Defense

In the pending petition, Lambrix claims that he has consistently pled a theory of self-defense. A review of the record reveals otherwise. As we explained above, this theory was not presented at trial, on direct appeal, or in Lambrix's original postconviction motion. For all these reasons, we conclude that Lambrix's delayed and unsupported theory of self-defense does not establish a claim of actual innocence.

### D. Whether Lambrix May Raise a Freestanding Claim of Innocence

Lambrix further argues that due process requires a cumulative review of all the evidence supporting his claim of actual innocence. However, this Court has reviewed multiple times the evidence Lambrix has claimed would establish his innocence and has consistently concluded that Lambrix has not shown that any of this evidence "would probably produce an acquittal or . . . mitigate his sentence." Lambrix, 124 So. 3d at 896.

In addition to this Court's review of Lambrix's claims over the course of the past thirty years, in Tompkins v. State, 994 So. 2d 1072 (Fla. 2008), this Court "rejected the claim that Florida's failure to recognize a freestanding actual

- 9 -

innocence claim violates the Eighth Amendment." Id. at 1089 (citing Rutherford v. State, 940 So. 2d 1112, 1117 (Fla. 2006)). Thus, this Court does not recognize Lambrix's claim. In fact, in our 2010 opinion, we rejected Lambrix's claim that he was entitled to a new trial because he was actually innocent, explaining:

> We reject without discussion Lambrix's claim that he is entitled to relitigate whether he is innocent of the crime based on Schlup v. Delo, 513 U.S. 298 (1995). Lambrix mischaracterizes the holding of Schlup, which does not provide a freestanding claim to relitigate claims that are procedurally barred.

See Lambrix, 39 So. 3d at 266, n.10.

On direct appeal, this Court specifically found that sufficient evidence "support[ed] a finding that Lambrix committed the two murders in question," and, after careful consideration, rejected each of Lambrix's claims of error in the guilt phase. Lambrix, 494 So. 2d at 1145, 1148. Since then, this Court and the federal courts have reviewed Lambrix's various claims for relief; each time, Lambrix's convictions and sentences have been affirmed. Whether considered individually or cumulatively, Lambrix has not established that he would be entitled to a new trial based on "actual innocence." Thus, we conclude that Lambrix is not entitled to relief on this claim. We address Lambrix's other substantive claims below.

## II. Denial of the Right to Testify and Present a Defense

The Eleventh Circuit previously rejected Lambrix's claim that his right to testify was denied. <u>Lambrix</u>, 72 F.3d at 1508. This Court further elaborated on Lambrix's claim that he was denied the right to testify:

> [I]n prior litigation, Lambrix asserted that during the guilt phase of his first trial, his counsel told the trial judge to inform Lambrix that if Lambrix chose to testify in his own defense during the guilt phase, his counsel would withdraw and the court would not appoint new counsel for Lambrix. Thus, Lambrix contends that he was denied his fundamental right to testify. The Eleventh Circuit rejected this claim . . . .
>
> . . . .
>
> The Eleventh Circuit noted that there was no evidence at all regarding any person who prevented Lambrix from testifying during the second trial, which occurred two months after his first trial ended in a hung jury. Moreover, to the extent that Lambrix's counsel advised Lambrix against testifying in the first trial, this advice pertained only to Lambrix's testimony concerning the guilt phase (at the first trial only), where Lambrix sought to tell the jury his version of how the victims died. <u>In other words, the claim that Lambrix was prevented from testifying at trial has been litigated and denied.</u> Even if Lambrix believed that he could not testify during the penalty phase at his second trial, this does not explain why he failed to present this claim in his initial postconviction motion. Lambrix clearly had the necessary knowledge pertaining to this claim, but failed to raise it at all, until his current attempt to resurrect this procedurally barred claim by pointing to a new witness he contends that he did not discover until now.

<u>Lambrix</u>, 124 So. 3d at 901-02 (citations omitted) (emphasis added). Thus, Lambrix is not entitled to relief on this claim.

- 11 -

### III. Access to DNA Evidence

Further, as to Lambrix's assertion that he was denied his right to DNA testing, we explained in 2013 that:

> As this Court has recognized, "[i]t is the defendant's burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant's sentence." Scott v. State, 46 So. 3d 529, 533 (Fla. 2009) (quoting Robinson v. State, 865 So. 2d 1259, 1265 (Fla. 2004)). Lambrix has completely failed to explain how finding Smith's hair on the murder weapon would help exonerate him or even cast Smith's testimony into doubt. Smith was at the murder scene after the murders occurred. According to her trial testimony, Lambrix was carrying the tire iron when he returned to the trailer alone and admitted to Smith that he killed both Bryant and Moore. Smith then helped to dispose of the bodies and the weapon. Thus, it would not be unexpected that her hairs could also be on the weapon, as she was present at the scene and helped to hide the weapon. As this Court has previously held, a trial court does not err in denying a motion for DNA testing where the defendant cannot show that there is a reasonable probability that the absence or presence of DNA at a crime scene would exonerate him or lessen his sentence. Scott, 46 So. 3d at 533. Accordingly, we deny this claim.

Id. at 895-96 (emphasis added). Four years later, in 2017, we again affirmed the postconviction court's denial of Lambrix's request for DNA testing of Bryant's clothing, the tire iron, and the t-shirt wrapped around the tire iron, stating:

> Lambrix has failed to explain how DNA testing of any of the items would lead to his exoneration of the crime or a reduced sentence. As to the tire iron and the shirt wrapped around the tire iron, as Lambrix himself acknowledges, prior testing already established that there was no blood on these items—an unsurprising result since the items were disposed of in a stream. Regarding Bryant's clothing, Lambrix provides no reason how Moore's DNA on Bryant would exonerate Lambrix. The facts already established that

> Lambrix and Smith invited a couple they met at a bar to their trailer—Bryant and Moore. Further, DNA testing was performed on Bryant's panties. Simply alleging that Bryant was found nude from the waist down and Moore's DNA may be on her clothing does not establish how that would exonerate Lambrix of killing both Bryant and Moore, particularly when Moore and Bryant were together that evening.

Lambrix, 217 So. 3d at 987 (emphasis added). Thus, Lambrix is not entitled to relief on this claim.

## CONCLUSION

It is clear that Lambrix has not been denied the opportunity to claim any constitutional right, nor has any right been denied to him without full consideration and review. To the contrary, for more than thirty years, Lambrix's multiple claims have been reviewed and rejected. Thus, we conclude that Lambrix is not entitled to relief.

Accordingly, we deny Lambrix's petition for a writ of habeas corpus. No rehearing shall be allowed.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and LAWSON, JJ., concur.
QUINCE, J., recused.

An Original Proceeding – Habeas Corpus

Neal A. Dupree, Capital Collateral Regional Counsel, William M. Hennis III, Litigation Director, and Bryan E. Martinez, Staff Attorney, Capital Collateral Regional Counsel-Southern Region, Fort Lauderdale, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Scott A. Browne, Senior Assistant Attorney General, and C. Suzanne Bechard, Assistant Attorney General, Tampa, Florida,

for Respondent